UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY EDWARD CIAVONE,

                Petitioner,               Case Number 11-14641
                                                  Honorable Marianne O. Battani

v.

THOMAS MACKIE,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) GRANTING A PARTIAL CERTIFICATE OF APPEALABILITY, AND (3)
GRANTING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. §

2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree

murder. MICH. COMP. LAWS § 750.316. The trial court sentenced him to mandatory life

imprisonment. The 204-page habeas petition raises five groups of claims: (1) several errors

occurred in connection with the trial court's failure to hold a competency hearing; (2)

Petitioner was denied the effective assistance of trial counsel; (3) the trial court did not

comply with the Michigan Court of Appeals' order of remand; (4) Petitioner was denied the

effective assistance of appellate counsel; and (5) the prosecutor committed misconduct.

The petition will be denied because Petitioner's claim are either procedurally barred from

review of without merit. The Court will, however, grant Petitioner a certificate of

appealability with respect to his first claim and will grant him permission to proceed on

appeal in forma pauperis.

I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

Defendant and co-defendant William Hill were tried together, to separate juries, for the murder of Jeannette Zummo, who was found dead in her Palmer Park home in Detroit on December 19, 1999. The cause of death was manual strangulation. Zummo was 85 years old at the time, kept large amounts of cash hidden throughout her house, and had no children. A home health care aid, Martha Chenney, attended to Zummo three days a week, and David Holt, a friend whom Zummo had appointed as one of her two trustees, visited Zummo regularly.

Frank Hodges, a handyman that had worked in Zummo's neighborhood, was arrested about a year after Zummo's murder, and made a statement to the police confessing to having robbed and murdered Zummo. However, Hodges was tried, presented an alibi defense, and was acquitted of all charges.

In April 2004, defendant and co-defendant Hill were tried for Zummo's murder. There was no physical evidence tying defendant to the murder, and no witness placing him at the murder scene. The prosecution's case rested largely on the testimony of three associates of defendant and co-defendant Hill, Hadel, Lane, and Salaytah, all of whom, along with Hill, were caught red-handed robbing a cigarette store in Macomb County in 2002. After being arrested for that robbery, Hadel, Lane and Salaytah came forward and informed authorities that defendant and Hill had robbed and killed Zummo. The prosecution also called a jail-house informant, Joseph Addelia, who testified that he and defendant had been cellmates in Wayne County jail for a few weeks in August 2003, and that defendant told him he and Hill robbed and murdered Zummo. Addelia had served time for bank robbery and was being held in jail for unarmed bank robbery at the time. Addelia testified that he had his mother contact the Detroit Police Homicide division "out of repulsion," and that he got nothing in return for his testimony, either from the Wayne County prosecutor, Detroit police, or the federal authorities.

Defense counsel in opening statement cast suspicion for Zummo's murder on Hodges and on David Holt, noting that Holt was a revocable trustee of Zummo's, that Holt and Zummo had argued about money shortly before her murder, and that Holt inherited Zummo's house and several hundred thousand dollars from her. Defense counsel stated that Hadel, Lane

2

and Salaytah were thieves, did not come forward until years after the murder when they were arrested for the cigarette store robbery, and that they believed defendant had tipped the police off about the Macomb County robbery, thus they had reason to concoct testimony against defendant.

At trial, Holt testified that Zummo's house needed new roofing, that he had recommended TLC Roofing, and that TLC had called him with an estimate for the job. Defendant was the owner of TLC Roofing.

Hadel, Lane and Salaytah testified at trial that they had known defendant and Hill for years, and that defendant had told them that he and Hill robbed Zummo and that Hill killed her, and that Hill had told them he and defendant had robbed Zummo and defendant killed her. Lane also testified that defendant asked him one evening to be dropped off in the Palmer Park area because he was owed money by a man he had done work for. Hadel testified that defendant called him very late one night and asked that he pick him up at Seven Mile and Woodward, which is near Palmer Park, and that when he picked defendant up, defendant said that they had to pick Hill up down the road. Hadel testified that Hill ran out of some bushes, carrying a bag that he later learned contained tens of thousands of dollars. Lane testified that he heard after he was convicted of the Macomb County robbery that defendant or defendant's wife had tipped off the authorities about that robbery. Neither defendant nor co-defendant Hill testified.

The jury convicted defendant of first-degree murder and felony murder, and co-defendant Hill of second-degree murder and felony murder.

People v. Ciavone, No. 256187, 2007 WL 4322168 (Mich. Ct. App. Dec. 11, 2007).

Following his conviction, Petitioner was sentenced to life imprisonment.

Petitioner then retained appellate counsel who filed an appellate brief raising four issues. Soon thereafter, however, Petitioner filed a motion in the Court of Appeals to discharge his appellate counsel. Petitioner also moved the Court of Appeals to remand the case for an evidentiary hearing. Petitioner claimed that he had newly discovered evidence consisting of a recanting affidavit from co-defendant Hill, in which Hill purportedly claimed that he framed Petitioner for the murder. Petitioner further asserted that the prosecutor committed misconduct because he should have known Lane, Salaytah and Hadel were

3

lying about Petitioner involvement in the murder. Petitioner also claimed trial counsel had been ineffective for not investigating or bringing these matters out at trial.

On September 1, 2005, the Court of Appeals granted Petitioner's motion to withdraw his appellate counsel's brief. The court granted Petitioner's pro se motion for remand, and attorney Christine Pagac from the State Appellate Defender's Office was appointed to represent Petitioner at the remand hearing and on appeal.

Prior to the remand hearing, Petitioner's appellate counsel filed a motion with the Court of Appeals asking to raise an additional issue regarding some class rings that had been mentioned during trial. The Court of Appeals granted the motion.

On November 3, 2006 the motion for new trial was heard. Petitioner's appellate counsel did not address any of the issues Petitioner's original pro se motion raised. That is, nothing regarding Hill's recanting affidavit or the related legal issues were presented to the trial court. Rather, appellate counsel only pursued the issue involving the class rings at the hearing. The trial court denied the motion for new trial in a six-page opinion and order. People v. Ciavone, No. 03-014160-01, Opinion and Order (Wayne County Cir. Ct. Dec. 20, 2006).

Following the denial of the motion for new trial, attorney Pagac filed a brief on appeal with the Court of Appeals, raising the following issues:

I. Mr. Ciavone was denied his constitutional right to confront the witnesses against him by the admission of hearsay evidence regarding testimony offered at the trial of Frank Hodges, as well as the fact of Hodges' acquittal.

II. Mr. Ciavone was denied his right to confront the witnesses against him by the admission of hearsay testimony of his nontestifying co-defendant.

III. Mr. Cavone is entitled to a new trial because the prosecution's failure to disclose evidence directly affecting the credibility of Hdel violated his

4

constitutional rights to confrontation and to due process.

IV Mr. Cavone's right to due process was violated through the prosecution's knowing use of false testimony.

V. The imposition of two life sentences for the murder of one person violates the prohibition against double jeopardy.

Petitioner also filed his own pro se supplemental brief, raising the following additional issues:

I. The prosecutor violated Mr. Ciavone's state and federal constitutional rights to due process and a fair trial by engaging in misconduct by(1) vouching for the credibility of witnesses; (2) allowing false and perjured testimony to go uncorrected; (3) making disparaging remarks about defendant's character; (4) testifying to facts not in evidence; and (5)injecting her personal opinion of guilt in closing arguments.

II. Appellant's rights to effective assistance of counsel under the state and federal constitutions were violated where trial counsel failed to investigate and failed to object to numerous instances of prosecutorial misconduct.

III. Appellate counsel was constitutionally ineffective for failing to raise the issue of ineffective trial counsel during an evidentiary hearing and in her brief on appeal.

Petitioner then filed an amendment to his pro se brief, adding the issue whether he was competent to stand trial. Petitioner asserted that the trial court had entered a false order saying he had been found competent. The Court of Appeals denied Petitioner's request to add the competency issue.

On December 11, 2007 the Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion, but it vacated one of Petitioner's two life sentences on double jeopardy grounds. People v. Ciavone, No. 256187, 2007 WL 4322168 (Mich. Ct. App. Dec. 11, 2007).

Petitioner filed a pro se motion for reconsideration, asserting that attorney Pagac

5

had not pursued the issues that he had raised in his original motion to remand which had led the Court of Appeals to order an evidentiary hearing in the first place.

On January 30, 2008 the Court of Appeals ordered the trial court to hold a second hearing to determine why attorney Pagac had not pursued the original remand issues at the first evidentiary hearing. People v. Ciavone, No. 256187, Order (Mich. Ct. App. Jan. 30, 2008).

Petitioner then filed a motion to expand the grounds to be considered at the remand hearing on the basis of newly discovered evidence against 36th District Court Judge Theodore Wallace. Petitioner asserted that the judge fraudulently signed an order stating Petitioner had waived a competency evaluation or had been found competent after a hearing that never occurred. On March 21, 2008 the state Court of Appeals denied Petitioner's motion to expand the grounds on remand.

On August 22, 2008, the trial court held the second evidentiary hearing. Attorney Daniel Rust was appointed to represent Petitioner. Attorney Pagac was the sole witness and testified regarding the reasons she did not pursue Petitioner's pro se allegations at the first remand hearing. After the hearing, the trial court found Pagac's testimony credible and determined that she did not deny Petitioner the effective assistance of appellate counsel because her decision to abandon the claims was reasonable.

On November 20, 2008, the Michigan Court of Appeals entered an order denying reconsideration of its December 11, 2007, opinion which had been held in abeyance pending the second hearing.

Petitioner next filed an application for leave to appeal in the Michigan Supreme Court, raising all the issues that had been raised in the Court of Appeals by Pagac and in

6

his pro se filing. Petitioner also raised the following new issue in the Michigan Supreme Court:

> I. The Michigan Court of Appeals violated Mr. Ciavone's state and federal constitutional rights to due process where the court remanded Ciavone back to the trial court for a Ginther hearing, where he was represented by standby counsel during that hearing, then denied his claim of appeal from that hearing and denied him the opportunity to file a supplemental brief following that hearing, by issuing an order denying his motion for reconsideration on 11-20-08, which is what got him the Ginther hearing.

The Michigan Supreme Court denied the application for leave to appeal by form order. People v. Ciavone, 764 N.W.2d 254 (Mich. 2009) (table).

Petitioner then filed a motion for relief from judgment with the trial court, raising the following claims:

> I. Petitioner was denied due process by the trial court's failure to ascertain Petitioner's competency to stand trial.

> II. Petitioner discovered new evidence to support his competency issue.

> III. The trial court failed to comply with Michigan Court of Appeals January 13, 2006, remand order.

> IV. Petitioner has discovered new evidence of witness perjury.

> V. Petitioner's trial counsel was ineffective.

The trial court denied the motion in an opinion dated March 8, 2010. People v. Ciavone, No. 03-014160-01, Order, p. 7 (Wayne County Cir. Ct. March 8, 2010).

On July 15, 2010, Petitioner filed a second motion for relief from judgment. On August 10, 2010, the trial court entered an order denying the second motion for relief from judgment. People v. Ciavone, No. 03-014160-01, Order (Wayne County Cir. Ct. Aug. 10, 2010).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals,

7

raising what now form his first four habeas issues. The Michigan Court of Appeals denied

the application for leave to appeal for failure to establish entitlement to relief under Rule

6.508(D). People v. Ciavone, No. 300905, Order (Mich. Ct. App. June 23, 2011).

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court,

but it too denied relief under Rule 6.508(D). People v. Ciavone, 803 N.W.2d 346 (Mich.

2011) (table).

Petitioner then filed the instant petition, raising the following claims:

I. Petitioner's state and federal due process rights were violated where the courts failed to have him evaluated for competency as ordered, then trial and appellate counsels failed to raise the question of his competence when they were required by law.

> A. If this court finds that a judicial finding was, in fact, made on the competency of Petitioner Ciavone, he is entitled to a reversal of his conviction where the hearing was held in the absence of Petitioner thereby violating Petitioner's constitutional right to be present at a critical stage of proceedings.

> B. The 36th district court did not have jurisdiction or authority to proceed against Petitioner Ciavone due to the court failing to adhere to its own order to have him evaluated for competency prior to the preliminary exam.

> C. The state court violated due process where counsel raised the question of petitioner ciavone's competence by motion; and the district court proceeded to trial and sentencing without the required state procedure of evaluation and hearing for competence.

> D. The state court violated Petitioner Ciavone's procedural due process rights to have his competence determined where the trial court ignored his bizarre behavior during trial and when the jury questioned whether he was medicated or not, the judge deceived the jury before directing them to ignore it.

> E. The denial of Petitioner's January 14, 2010, motion to show cause as to why the 36th district court's register of actions

8

reflects that Petitioner was found competent to stand trial or waived his court ordered evaluation absent the required competency report, signed constitutional waiver, or transcript of the verbatim record was clearly erroneous, and requires show cause to be ordered.

II. Petitioner Ciavone was denied his right to the effective assistance of trial counsel under the VI and XIV Amendments of the U.S. Constitution and Michigan's Constitution of 1963, art 1 § 20.

A. Trial counsel was ineffective where he chose to raise a weaker defense than the defense counsel knew was stronger; that the prosecution's paid informants/three main witnesses, Hadel, Lane, and Salaytah conspired to falsely implicate Petitioner Ciavone in Zummo's murder in retaliation for Petitioner snitching on them for their tobacco heist, where there is ample evidence to support the trio's plot against Petitioner that was never introduced to the jury.

B. Trial counsel was ineffective for failing to retrieve verifiable phone and pager records that would have discredited the trio's story, and were crucial regardless of the defense chosen.

C. Trial counsel was ineffective for failing to retrieve verifiable police records that would have shown that it was highly unlikely that Petitioner and Hill would have committed the murder together due to their enemy status, which would have discredited the trio's story.

D. Trial counsel was ineffective for failing to retrieve other verifiable evidence that would have directly discredited the trio's trial testimony.

E. Trial counsel was ineffective for introducing unfairly prejudicial false evidence against his own client, knowing it was false, where counsel was completely unprepared to correct it.

F. Trial counsel was ineffective where he raised the question of petitioner's competence to stand trial, then inexplicably failed to ensure his client was in fact competent before allowing the courts to proceed against him.

G. Trial counsel was constitutionally ineffective for failing to subpoena witnesses who could have disputed the state's case against his client.

9

H. Trial counsel was constitutionally ineffective for his failure to investigate the inconsistencies in witnesses sworn statements and prior testimony as compared to testimony offered at his client's trial.

III. Petitioner Ciavone's state and federal due process rights were violated where the trial court failed to obey the court of appeals January 13, 2006, order and the January 30, 2008, order.

A. The state process of law by which this petitioner was pursuing his appeal of right was forfeited where the trial court acted in defiance of the orders of the appeals court.

B. The trial court judge David Allen did violate Petitioner's state and federal due process rights to full and fair hearings to adequately develop the record wherefore petitioner asks that Judge Allen be recused due to Allen's bias/prejudicial actions towards Petitioner where evidence appears Allen has a vested interest in Petitioner's proceedings.

IV. Petitioner Ciavone was denied his right to the effective assistance of appellate counsel under the VI and XIV Amendments of the U.S. Constitution and Michigan's Constitution of 1963, art 1 § 20.

A. Appellate counsel was ineffective for acting in defiance of the orders of the appeals court, and against her client's decision and interests during Petitioner Ciavone's appeal of right causing his remand issues to be forfeited.

B. Appellate counsel was ineffective where she informed petitioner that she would investigate his competency issues, then failed to adequately investigate medications he took during trial and whether his competence was ever determined prior to the court's proceeding against him; to be raised on his appeal of right.

V. The prosecutor violated petitioner ciavone's state and federal constitutional rights to due process and a fair trial by engaging in misconduct by: (1) vouching for the credibility of witnesses; (2) allowing false and perjured testimony to go uncorrected; (3) making disparaging remarks about petitioner's character; (4) testifying to facts not in evidence; and (5) injecting her personal opinion of guilt in closing arguments.

A. Petitioner's state and federal constitutional right to due process and a fair trial were violated where the prosecutor

10

vouched for the credibility of state's witnesses.

B. Petitioner's state and federal constitutional right to due process and a fair trial were violated where the prosecutor allowed false and perjured testimony from state witnesses to go uncorrected.

C. Petitioner's state and federal constitutional right to due process and a fair trial was violated when the prosecutor injected into the trial grossly improper remarks impugning his character.

D. Petitioner's state and federal constitutional right to due process and a fair trial was violated when the prosecutor injected into her closing arguments facts that were not in evidence.

E. Petitioner's state and federal constitutional right to due process and a fair trial was violated when the prosecutor injected her own personal opinion into the trial.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

11

of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." <u>Id</u>. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id</u>. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010)((quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7 (1997); <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011)(citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>. (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. <u>Id</u>.

"[I]f this standard is difficult to meet, that is because it was meant to be." <u>Harrington,</u>

12

131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III. Discussion

#### A. Competency to Stand Trial

Petitioner's first set of claims involve his allegation that there was no evaluation or hearing on his competency to stand trial. Petitioner asserts that the issue of his competency was first raised by his counsel in the state district court, and an order was entered requiring an examination and hearing, but the order was never carried out. He also argues that his bizarre behavior during trial should have prompted the trial judge to order another evaluation. Finally, Petitioner argues in the alternative that if a competency hearing

13

was held,he was not present at it, violating his right to be personally present at all critical stages of the proceedings. Respondent asserts that review of the claims is barred by Petitioner's procedural default, and that the claims are otherwise without merit.

First, with respect to the procedural default argument, Respondent asserts that this group of claims is defaulted because the trial court relied on Michigan Court Rule 6.508(D)(3) when it denied Petitioner relief. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010).

In fact, however, Petitioner first attempted to present issues related to his competency to the Michigan Court of Appeals in a pro se brief during his direct appeal, but the state appellate court denied his motion to add this issue. People v. Ciavone, No. 256187 (Mich. App. March 21, 2008). Conceivably, the state court's act of denying his motion to file the supplemental brief constituted "an objective factor external to the defense [that] impeded [Petitioner's] efforts to comply with the State's procedural rule" requiring him to present his issue during his direct appeal, thereby excusing his default.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

Furthermore, contrary to Respondent's representations, it is not clear that the trial court relied on Rule 6.508(D)(3) in denying Petitioner relief with respect to this set of claims. The trial court's opinion denying the motion for relief from judgment does began and end with a statement outlining the requirements of Rule 6.508(D)(3), but nowhere in the opinion does it state that Petitioner's competency claims were being denied on that basis. Rather, the portion of the opinion that discusses the claims seems to reject them on the merits by making a factual finding that a competency hearing was in fact held on December 17, 2003, and Petitioner was found to be competent.

14

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. See Trest v. Cain, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also, Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings). In light of the difficulties presented by Respondent's procedural default argument, the Court will therefore proceed to the merits of Petitioner's claim.

Turning to the merits, the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. Medina v. California, 505 U.S. 437, 439 (1992); see also Pate v. Robinson, 383 U.S. 375, 378 (1966). The standard governing competency to stand trial is: "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). If, at any point, "before or during trial 'sufficient doubt' arises about a defendant's competence — 'the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense' — the trial court should order a competency hearing." Cowans v. Bagley, 639 F.3d 241, 247 (6th Cir. 2011) (quoting Drope v. Missouri, 420 U.S. 162, 180 (1975)).

15

A state court's "determination of competence is a factual finding, to which deference must be paid." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir.2006) (citing Thompson v. Keohane, 516 U.S. 99, 110-11 (1995)). The test for whether a trial court erred in not holding a proper hearing is whether a reasonable judge in that position would have "experienced doubt with respect to competency to stand trial." Id.

There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," Drope, 420 U.S. at180, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." Id. These "open-ended standards" and "high threshold" for establishing incompetence allow state courts "wide latitude" in determining whether to hold a competency hearing. Cowans, 639 F.3d at 247.

Petitioner asserts that his trial attorney, Sanford Schulman, moved for a competency evaluation in the state district court prior to the preliminary examination. Petitioner has attached to his petition exhibits purporting to show that he has suffered from life-long mental illness. Petitioner implies that these were the records relied upon by his counsel to support the motion for an evaluation. The records include documents from the Center Line Public Schools indicting that Petitioner had troubles from the first-grade on, and at some point was certified as "learning disabled and emotionally impaired." Further school records show that he was operating academically at a fifth-to-seventh grade level when he was in the eleventh grade. Petitioner's problems apparently persisted into adulthood. When he was thirty years old, Petitioner sought treatment for hyperactivity at St. John's Hospital. Testing there indicated that he had a type brain wave abnormality.

16

According to the state circuit court docket sheet, on September 29, 2003, the preliminary examination was adjourned, and Petitioner was referred to the "clinic" for a competency report.[1] The docket sheet further indicates that on December 17, 2003, a competency hearing was held before 36th District Judge Theodore C. Wallace, indicates that a court reporter was present, and that Petitioner was found to be competent. Both parties note, however, that 36th District Court docket sheet indicates that the competency hearing was waived. A copy of this docket sheet was not filed with the state court record in this Court.

The version of events suggested by the circuit court docket sheet are supported by a letter dated November 12, 2007, from Petitioner's trial counsel to Petitioner, which Petitioner attached as an Exhibit to his petition. In the letter, trial counsel states, "As you recall, I made a motion for competency and criminal responsibility at the district court level prior to your preliminary examination. This caused a delay in the preliminary examination. The report was reviewed and it concluded that you were competent and that there was insufficient showing of lack of criminal responsibility." Schulman goes on to state that he no longer had a copy of the evaluation, and he suggested that he sent it to Petitioner's first appellate attorney, Roach.

This Court ordered Respondent to investigate whether a transcript or recording of Petitioner's competency hearing was available. On October 11, 2013, Respondent filed a response indicating that neither the 36th District Court nor the Wayne County Prosecutor's

_____

[1]This would seem to indicate that the competency evaluation was performed at the Third Circuit Court-Criminal Division Psychiatric Clinic, and not at the state Center for Forensic Psychiatry, as assumed by the parties at various stages of the state court proceedings.

17

Office could locate any records, other than the docket sheet entries, of a competency hearing in Petitioner's case.

In any event, the preliminary examination was held soon thereafter on December 23, 2003, and trial began on April 14, 2004. At some point during the trial, the jury sent a note to the trial judge inquiring about what medication Petitioner was taking. Petitioner asserts that this constitutes evidence that his demeanor or behavior during the trial should have alerted the trial judge to again raise the issue of Petitioner's competency. Furthermore, Petitioner has submitted affidavits from his parents, indicating that they attended the trial and observed that Petitioner appeared to be confused and disoriented. Petitioner also obtained his Wayne County Jail records which indicate that he was prescribed Atarax, Zyprexa, Zantac, and Benadryl at the time of his trial. Pagac's investigation, however, indicated that the Wayne County Jail notes "contain no complaints of drowsiness...."

Against this backdrop, the state trial court denied Petitioner relief with respect to Petitioner's competency claims by rejecting the underlying factual basis. The court found: "A careful review of the records show that on December 17, 2003, a competency hearing was held and defendant was found competent." People v. Ciavone, No. 03-014160-01, Order, p. 3 (Wayne County Cir. Ct. March 8, 2010).

If, as the state circuit court found, a competency hearing was in fact held, three out of Petitioner's five claims regarding this issue -I(B), I(C), and I(E)–lose there factual basis. Petitioner's claim I(B) asserts that the state courts lost jurisdiction over his case by failing to hold a competency hearing. Claim I(C) asserts that his due process rights were violated when no hearing was held after an order to do so. And claim I(E) asserts that Petitioner

18

was found competent despite the absence of a report or hearing. Obviously, these claims are without merit if, as the state trial court found, a hearing was held in which Petitioner was found to be competent.

Generally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption, however, with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998). Petitioner point to the facts that there is no transcript of a competency hearing and that there is no existent report regarding his competency as demonstrating that no hearing or evaluation was ever conducted. He also points to the fact that attorney Pagac's letter indicated that the Forensic Center had no record of him being evaluated at their facility. While these items constitute some circumstantial evidence that no evaluation or hearing was conducted, it does not clearly and convincingly show that the trial court's factual determination was wrong.

The trial court based its determination on the entries in its own docket sheet, which indicate that an evaluation was ordered and a hearing held. Finding of facts made by a state court based on docket sheet entries are entitled to the presumption fo correctness under §2254(e)(1). See Washington v. Sobina, 509 F.3d 613, 621 (3d Cir. 2007); Stewart v. Dipaolo, 74 Fed. Appx. 65 (1st Cir. 2003); United States ex rel. Smith v. Rednour, 2010 U.S. Dist. LEXIS 114193, *13-14 (N.D. Ill. Oct. 26, 2010).

The factual finding is further supported by trial counsel's recollection that he reviewed an evaluation that found Petitioner to be competent and that a hearing was held. The fact that the Forensic Center has no record of Petitioner can reasonably be supported by the indication that Petitioner was referred instead to the trial court's own clinic and not

19

the state center. Finally, while it is troubling that no transcript exists of the hearing, there is no indication that a transcript was ever ordered to be prepared for Petitioner's direct appeal.

Petitioner seems to assert that the state trial court was required to hold a hearing on his motion for relief from judgment to determine whether a competency evaluation and hearing were conducted, rather than just relying on the entries in a docket sheet. However, nothing in the AEDPA suggests that a federal habeas case defer to state court factual findings only if the state court held a hearing to determine the facts. Cowans v. Bagley, 639 F.3d 241, 246-248 (6th Cir. 2011); Mendiola v. Schomig, 224 F.3d 589, 592-593 (7th Cir. 2000) ("§2254(e)(1) does not require findings to based on evidentiary hearings."); Rolan v. Vaughn, 445 F.3d 671, 679-680 (3rd Cir. 2006).

Accordingly, the Court will defer to the state trial court's factual finding that Petitioner was found to competent after a hearing was held in the state district court. Because a hearing was held, Petitioner's claims that are premised on the absence of a hearing are without merit.

This leaves claims I(A) and I(D). Claim I(A) asserts that if a hearing was held, it must have occurred outside of his presence, and therefore his right to be present at a critical stage of the proceedings was violated. There are two problems with this argument. First, there is no support in the record for Petitioner's assertion that he was not present at the competency hearing. Second, even if a competency hearing was held in his absence, clearly established Supreme Court law did not require his presence at such a hearing. See Kentucky v. Stincer, 482 U.S. 730, 747 (1987)(due process did not require defendant's presence at competency hearing).

20

Finally, Petitioner claims that the trial court should have ordered another competency evaluation and conducted another hearing due to Petitioner's behavior at trial. A competency hearing must be held where a reasonable judge, faced with the facts before the trial judge, would have a "bona fide doubt" about the defendant's competence. Warren v. Lewis, 365 F.3d 529, 533 (6th Cir. 2004). The focus of the inquiry is "on what the trial court did in light of what it knew at the time of the trial or plea hearing." Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990). Factors giving rise to a bona fide doubt may include prior medical opinions on his competence to stand trial or plead guilty, his demeanor in court, and his irrational behavior. See Drope, 420 U.S. at 180.

Here, the trial court had before it a prior determination that Petitioner was competent to stand trial, and Petitioner's trial counsel did not raise any issue at trial regarding Petitioner's capacity to assist in his defense. At best for Petitioner, as indicated by his parents' affidavits and the jury note, it might have appeared that Petitioner was drowsy or otherwise unengaged during the trial. While an argument could be made that a reasonable judge would have made some inquiry, the "open-ended standards" and "high threshold" allows state courts a "wide latitude" in determining whether or not to hold a competency hearing. Cowans, 639 F.3d at 247. Given the prior determination that Petitioner was competent and the lack of any motion by defense counsel raising the issue, it was not objectively unreasonable for the trial court to fail to hold a competency hearing during the trial.

Accordingly, none of Petitioner's first set of habeas claims merit relief.

21

B. Ineffective Assistance of Counsel

Petitioner's second claim is comprised of eight allegations of ineffective assistance of trial counsel. Petitioner asserts that: (1) his counsel failed to present a defense that the three principal prosecution witnesses conspired to falsely accuse him of the murder in retaliation for Petitioner's implicating them in another robbery; (2) counsel failed to obtain phone records to discredit the three witnesses' stories; (3) counsel failed to present evidence showing that Petitioner and Hill were enemies and therefore would not have committed the murder together; (4) counsel failed to obtain impeachment evidence; (5) counsel introduced false evidence against Petitioner; (6) counsel failed to ensure Petitioner's competence to stand trial; (7) counsel failed to call favorable defense witnesses; and (8) counsel failed to raise inconsistencies between the prosecution witnesses' testimony and prior statements. Petitioner's third claim asserts that the trial court violated his rights by failing to address these claims on remand by the state appellate court, and his fourth claim asserts that his appellate counsel was ineffective for failing to develop these allegations during the first hearing.

Respondent asserts that these claims were reasonably rejected by the state courts.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. Id. at 687. These two components are mixed questions of law and fact. Id. at 698. Further, "[t]here is no reason for a court deciding an

22

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

With respect to the performance prong of the Strickland test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. See id. at 689; see also O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In this case, the Michigan Court of Appeals denied relief with respect to Petitioner's ineffective assistance of counsel claim as follows:

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. People v. LeBlanc, 465 Mich. 575, 578 (2002). A defendant can overcome the presumption by showing a failure to meet a minimum level of competence, People v. Jenkins, 99 Mich. App. 518, 519 (1980).

> Defendant argues that trial counsel was ineffective for failing to subpoena witnesses who could have disputed the State's case against him, failing to produce exculpatory evidence that would have disputed the State's case, and failing to investigate the inconsistencies in sworn witness statements and prior testimony as compared to testimony offered at his

23

client's trial.

Defendant raised the issue of ineffective assistance in the motion for new trial he filed before this Court remanded to the trial court. On remand, counsel was appointed for defendant and at the hearing on remand counsel did not pursue these ineffective assistance of counsel claims, and effectively abandoned them. Thus, no record was made of these claims and this Court's review is limited to errors apparent on the record. People v. Rodriguez, 251 Mich.App. 10, 38 (2002). We conclude that defendant has not established that the alleged ineffective assistance deprived him of a defense that might have made a difference in the trial's outcome.

It is well established that this Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. People v. Matuszak, 263 Mich.App. 42, 58 (2004). Decisions as to what evidence to present are presumed be matters of trial strategy, People v. Mitchell, 454 Mich. 145, 163 (1997), and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense, People v. Hoyt, 185 Mich. App. 531, 538 (1990). A substantial defense is one that might have made a difference in the outcome of the trial. People v. Daniel, 207 Mich. App. 47, 58 (1994).

Defendant asserts that trial counsel's failure to call a neighbor of Hadel's, who would have testified that Hadel had confessed to her that he (Hadel), Lane and Salaytah were testifying against Ciavone in the Zummo trial just to get even with him for snitching on them in the tobacco store robbery. These claims were not supported on remand. We further note that the theory that Hadel, Lane and Salaytah contacted the authorities after their arrest in the tobacco store robbery because they suspected defendant tipped the police off regarding that robbery was well explored and advanced at trial. Thus, had Hadel's neighbor been called, her testimony would likely have been cumulative. Defendant thus has not established that this testimony could have made a difference in the trial's outcome.

Defendant also maintains that trial counsel failed to call defendant's wife and stepdaughter, who would have established there was no possibility that Salaytah ever worked for defendant at TLC because defendant immensely disliked Salaytah, and could have established that there is no way Salaytah could have heard about the Zummo murder at work, and the dates Salaytah provided to his probation officer as being in TLC's employ could not have been accurate because defendant had an alibi and was somewhere else when Salaytah claims to have had certain conversations with him.

Defendant contends that his wife and step-daughter also could have

attested to the fact that defendant used his car as collateral for a loan with a loan shark to pay house bills and the car was unavailable to him from April until the end of July 2002, which would have disputed Lane's testimony that he had heard any kind of argument in that particular car in June 2002.

Other than defendant's statements, there is no evidence supporting that his wife and stepdaughter would have so testified at trial, or that the testimony would have affected the outcome. Defendant has the burden of establishing the factual predicate for his claim of ineffective assistance, People v. Hoag, 460 Mich. 1, 6 (1999), and has not done so.

Defendant also asserts that trial counsel was ineffective in failing to have defendant take the stand to testify in his own behalf so he could establish the fact that Lane was an employee of TLC who had gone with defendant to the Zummo residence on Holt's instructions to provide an estimate for roofing repairs. Defendant maintains that he could have testified that although he (defendant) had never seen or spoken to Zummo personally, he had seen Lane speaking to someone inside the home, and that this testimony would have contradicted Lane, who claimed never to have been at the Zummo residence.

Defendant also contends that he should have been called to testify that he had been feuding with co-defendant Hill since December 1998, and that Hill was prepared to testify against him relative to a weapons charge. Defendant asserts he would have testified that he made a statement to police in August 1999 accusing Hill of robbing his residence, that he testified against Hill in a chop shop trial in October 2000, that he took out a personal protection order against Hill in April 2001, and that this testimony would have helped illustrate how and why Lane, Hadel and Salaytah conspired to frame defendant for participating with Hill in Zummo's murder.

Defendant failed to develop this claim of ineffective assistance on remand, and we cannot conclude on the existing record that the decision not to call defendant was anything other than sound trial strategy. Nor do we have any basis to conclude that the jury would have been swayed by defendant's testimony.

Defendant also asserts that defense counsel failed to present evidence from any former TLC employees, who would have attested to the fact that defendant is a workaholic who frequently drives his employees to quit, which would have disputed the prosecution's case. Again, other than defendant's statements, there is no evidence showing that calling former TLC employees would have benefitted him. Thus, there are no errors apparent on the record. See People v. Pratt, 254 Mich. App. 425, 430 (2002). Defendant has the burden of establishing the factual predicate for his claim of ineffective

25

assistance, <u>Hoag</u>, supra at 6, and has not done so.

Next, defendant maintains that trial counsel was constitutionally ineffective for failing to produce exculpatory evidence he was aware existed. Defendant contends he wanted his trial counsel to present the formal complaint defendant made in 1999 to State Police alleging Hill robbed his residence; Marine City District Court documents showing that Hill was to testify against defendant in November 1999; St. Clair Circuit Court documents proving that defendant testified against Hill in an October 2000 chop shop case where Hill faced life imprisonment as a habitual offender; the PPO defendant took out against Hill in April 2001; Macomb County jail records that provided proof that defendant was incarcerated at the time of Hodges' arrest, confession and trial, which would have been evidence that defendant could not have known anything about a black man who confessed, and thus could not have bragged to the witnesses that someone else had been arrested for and charged in the murder he allegedly committed; and defendant's and Salaytah's MDOC probation records to prove that Salaytah erroneously claimed to work for TLC from June 2002 until January 2003, because defendant's records reported Salaytah was employed elsewhere due to a lack of roofing business, and Salaytah's records would have provided proof that he had previously been exposed as lying to his probation officer about where he was employed.

Again, defendant failed to present the facts supporting these claims on remand. Defendant has the burden of establishing the factual predicate for his claim of ineffective assistance, <u>Hoag</u>, supra at 6, and has not done so.

Defendant also maintains his trial counsel was constitutionally ineffective for his failure to investigate inconsistencies in sworn witness statements and prior testimony as compared to testimony offered at defendant's trial. We note that trial counsel zealously cross-examined Hadel, Lane and Salaytah at trial, and drew out many inconsistencies in their various accounts. Defendant has made no showing that trial counsel indeed failed to investigate such inconsistencies. Further, defendant relies on documents, including statements of witnesses the prosecution had called at trial, which he obtained and sent to the trial court on May 10, 2007, well after proceedings below had concluded in December 2006. These documents are not properly considered as they are not part of the record below.

In sum, we conclude that defendant has not supported trial counsel's alleged instances of ineffective assistance and has not shown that they deprived him of a substantial defense.

<u>People v. Ciavone</u>, No. 256187, 2007 WL 4322168 (Mich. Ct. App. Dec. 11, 2007).

26

Considering the deferential standard of review of claims adjudicated on the merits in the state court, Petitioner had not demonstrated entitlement to habeas relief based on his ineffective assistance of counsel claims. The Michigan Court of Appeals stated the corrected governing standard, and it applied it in a reasoned manner to the facts of Petitioner's case.

As recently explained by the Supreme Court, Strickland establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of Strickland:

> "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S.   ,   , 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at —. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether

27

there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.

<u>Richter</u>, 131 S. Ct. at 788.

The opinion of the Michigan Court of Appeals, at a minimum, presents a "reasonable argument" that Petitioner's trial counsel satisfied <u>Strickland's</u> standard.

Petitioner rejoins by asserting that his appointed appellate counsel, Pagac, was ineffective for abandoning these claims during the remand hearing, and that the trial court violated the remand order. Petitioner seeks an evidentiary hearing in the this Court to present evidence to support his claims.

There are two problems with these arguments. First, there is no question that the state courts adjudicated Petitioner's ineffective assistance of counsel claims on the merits. As such, Petitioner is prohibited from obtaining an evidentiary hearing in this Court to expand the record with respect to these claims. In <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011), the Supreme Court held that where a habeas claim has been decided on its merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was before the state court. 131 S. Ct. at 1398. The <u>Pinholster</u> Court specifically found that the federal district court should not have held an evidentiary hearing regarding <u>Pinholster's</u> claims of ineffective assistance of counsel until after the Court determined that the petition survived review under Section 2254(d)(1). <u>Id</u>., at 1398. Accordingly, Petitioner is barred from obtaining a hearing on his claims in this Court.

Secondly, Petitioner's appellate counsel was not ineffective for failing to pursue

these allegations regarding trial counsel at the remand hearing. Indeed, on order of the Michigan Court of Appeals, an evidentiary hearing was held regarding appellate counsel's failure to pursue these claims, and the state trial court reasonably found that appellate counsel properly abandoned them.

At the hearing, with respect to trial counsel's failure to pursue the competency issue, Pagac testified that she understood that Petitioner had been taking Atarax and Benadryl together for at least a few weeks before trial. She testified, however, that the dosage was at or below recommended doses. At some point during trial, she understood that Petitioner took another inmate's Seroquel. Nevertheless, she testified that the jail's notes did not support Petitioner's claim that he complained of being tired at the time of trial.

Pagac testified that she was also aware that one of the issues Petitioner's pro se motion to remand raised concerned co-defendant Hill recanting a statement. Pagac said she researched this issue and that she found she could not put Mr. Hill on the stand because he would not confirm Petitioner's allegations.

Pagac further testified that she was aware that the pro se motion had raised a number of inconsistencies in the testimony of the informants. But Pagac did not find the information substantial after reviewing it. Pagac employed a private investigator to assist her in reviewing the matter. Pagac said there were four "snitches" that testified against Petitioner, but with the investigator's assistance she had found impeaching these witnesses was not a viable issue to raise at the first evidentiary hearing.

Pagac testified that she spoke with trial counsel at least three times prior to the first hearing, and she did not have any information that would have allowed her to suggest trial counsel was ineffective. Pagac testified that she had communicated with Petitioner quite

29

a bit prior to the hearing, and that she had reviewed all the legal and factual issues and brought forth all of the issues she thought were legitimate. Pagac decided after her own review and that of the investigator not to pursue the issues raised in the pro se motion. Pagac communicated this to Petitioner.

Pagac testified that the investigator found Petitioner's factual claims were not true. According to Pagac, the investigator found co-defendant Hill was not going to recant his trial testimony as Petitioner claimed he would. Hill even denied signing the affidavit attached to Petitioner's pro se motion.

Pagac testified that she found nothing in the documentation from the Wayne County Jail that supported Petitioner's claim that he was incompetent. Pagac questioned a juror Regarding Petitioner's claim that the prosecutor had entered the jury room during deliberations, but the juror would not support the assertion. Pagac also testified that despite efforts to do so, she was unable to identify any witnesses that would contradict the testimony of Hadel, Lane and Salaytah.

The trial court subsequently denied Petitioner relief. It found that Pagac's testimony was credible and that Pagac had, after her own and her investigator's investigation, and after consultation with Petitioner, determined that his pro se claims did not merit further development during the first evidentiary hearing. The trial court found that Petitioner's allegations had been found after a reasonable investigation to be either false or unsubstantiated. Consequently, the trial court ruled Pagac had not been ineffective.

This determination was not unreasonable. The factual finding by the trial court that Pagac was credible is presumptively correct, and Petitioner has not rebutted it by clear and convincing evidence. 28 U.S.C. §2254(e)(1). Accordingly, the Court accepts as true,

Pagac's testimony that the factual underpinnings of Petitioner's pro se claims could not be supported at the evidentiary hearing.  It was therefore reasonable for Pagac to abandon those claims.

With respect to the trial court's failure to comply with the remand order, the argument is simply not cognizable in this action. There is no federal constitutional right to a state court appeal at all. Abeny v. United States, 431 U.S. 651, 656 (1977). Thus, to the extent the state trial court was required to explore Petitioner's pro se claims of ineffective assistance of trial counsel whether his appellate counsel wanted to or not, the failure would only amount to a violation of state law. See Hayes v. Prelesnik, 193 F.App'x 577, 584 (6th Cir. 2006); Greer v. Mitchell, 264 F.3d 663, 681 (6th Cir. 2001).

Finally, the fact that the Michigan Court of Appeals ordered a second evidentiary hearing to determine why Petitioner's pro se claims were not developed at the first hearing underscores the reasonableness of its decision. The appellate court found Petitioner's initial allegations meritorious enough to warrant further development at a hearing and ordered one to be conducted. When the case returned after the remand hearing, only one claim had been developed and the rest had been abandoned. Based on the record before it, the appellate court rejected the undeveloped claims for lack of evidentiary support. This of course left open the question if why those claims had not been developed, and so the appellate court ordered a second hearing. At that second hearing, Pagac testified, in essence, that she had been unable to marshal any evidence to support the claims, and so she abandoned them. The trial court found her to be a credible witness, and as a result the appellate court ultimately denied relief. It is hard to characterize this careful and thorough treatment of Petitioner's pro se claims as anything other than reasonable. Accordingly,

31

Petitioner has not demonstrated entitlement to habeas relief with respect to his ineffective assistance of counsel claims.

C. Prosecutorial Misconduct

Petitioner's fifth claim asserts that the prosecutor committed several acts of misconduct that rendered his trial fundamentally unfair. Specifically, Petitioner asserts that the prosecutor: (1) allowed witnesses to commit perjury; (2) vouched for the credibility of witnesses; (3) attacked Petitioner's character; (4) argued facts that were not supported by the evidence; (5) and asserted her own personal belief that Petitioner was guilty. Respondent argues that the first allegation was reasonably adjudicated in the state courts, and that the rest are procedurally barred.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181(1986) (citing Donnelly); Parker v. Matthews,    U.S.   , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that Donnelly/Darden is the proper standard).

With respect to Petitioner's first allegation of misconduct, the state appellate court found that the claim was without merit:

> Prosecutorial misconduct issues are decided on a case-by-basis, and this Court must examine the record and evaluate a prosecutor's remarks in context. People v. Thomas, 260 Mich. App. 450, 454 (2004). A prosecutor

32

may not knowingly use false testimony to obtain a conviction. See <u>Banks v. Dretke</u>, 540 U.S. 668, 694 (2004); <u>People v. Lester</u>, 232 Mich. App. 262, 276 (1998). A prosecutor has a constitutional obligation to report to the defendant and the trial court whenever a government witness lies under oath, and a duty to correct false evidence. <u>Lester</u>, supra at 276.

Defendant argues that the trial court erred in failing to find that the prosecution knowingly used false testimony, asserting that the prosecutor "allowed" Hadel to testify that the class rings had come from Zummo's home. The trial court concluded on defendant's motion for new trial (on remand from this Court) that this claim failed. As discussed in Issue III, and as the trial court concluded on remand, the prosecution did not introduce any evidence regarding the class rings, and it was defense counsel who elicited testimony regarding class rings at trial. Defendant's challenge fails, and the trial court did not clearly err in finding the prosecutor had not knowingly used false testimony to obtain defendant's convictions.

<u>People v. Ciavone</u>, No. 256187, 2007 WL 4322168 (Mich. Ct. App. Dec. 11, 2007).

This decision constituted a reasonable application of clearly established Supreme Court law. The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. <u>Coe v. Bell</u>, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. <u>Byrd v. Collins</u>, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. Coe, 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. Malcum v. Burt, 276 F. Supp. 2d at 684 (citing Monroe v. Smith, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted only if the perjury by a government witness undermines the confidence in the outcome of the trial. Id.

Here, as the state appellate court noted, it was defense counsel that elicited the testimony regarding the two class rings that Petitioner complains about. Moreover, after eliciting this testimony, defense counsel impeached the witness with the falsity of the claim. Therefore, neither the Petitioner nor the jury was duped by the inaccurate testimony. And, in no event did the prosecutor suppress anything or present or use the complained of testimony. The rejection of this claim was reasonable.

With respect to Petitioner's remaining allegations of prosecutorial misconduct, the state appellate court found that review was limited to whether "plain error" occurred because Petitioner had not objected at trial.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. Wainwright v. Sykes, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2005). Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental

34

miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Combs v. Coyle, 205 F.3d 269, 274 (6th Cir. 2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 315-16 (1995).

Petitioner's remaining claims of prosecutorial misconduct were procedurally defaulted by virtue of his failure to object to the prosecutor's comments in the trial court which resulted in appellate review under the more restrictive "plain error" standard of review. It is well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." Fleming v. Metrish, 556 F.3d 520, 524 (6th Cir. 2009).

A petitioner can overcome a procedural default only if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Here, Petitioner has not shown any cause for his procedural default. He asserts that his trial counsel was ineffective for failing to object to the prosecutor's statements, but like his other ineffective assistance claims, Petitioner never demonstrated in the state courts that his attorney's trial performance was deficient. Petitioner does not suggest any other cause to excuse his default.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

Schlup, 513 U.S. at 321. To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." U. at 329. "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Id. at 324. Here, Petitioner has not presented any new evidence that he was actually innocent of the crime. Having failed to meet this exception, Petitioner's remaining claims of prosecutorial misconduct are procedurally barred and not subject to habeas review.

Because all of Petitioner's claims are either without merit or procedurally barred, the Court will deny the petition.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

36

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). The Court finds that reasonable jurists could debate this Court's resolution of Petitioner's first claim. The conflicting record as to whether a competency evaluation and hearing was held leaves ample room to reasonably debate the merits of the claim. Therefore, the Court will grant Petitioner a certificate of appealability with respect to his first claim.  The Court will, however, deny a certificate of appealability with respect to Petitioner's other claims. The Court will also grant Petitioner permission to proceed on appeal in forma pauperis.

V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **GRANTS** a certificate of appealability with respect to Petitioner's first claim, **DENIES** a certificate of appealability with respect to his other claims, and **GRANTS** permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

s/Marianne O. Battani<br>Honorable Marianne O. Battani<br>United States District Judge

Dated: <u>January 31, 2014</u>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Order was served upon the Petitioner via ordinary U.S. Mail, and Counsel for the Respondent via the Court's ECF Filing System.

<u>s/Bernadette M. Thebolt</u>
Case Manager